UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SHAJI MARKOSE and RAGITHA SHAJI,

        Plaintiffs,

    -against-

CITIBANK NATIONAL ASSOCIATION and U.S. BANK
NATIONAL ASSOCIATION,

        Defendants.
------------------------------------------------------------------------x

COMPLAINT

19 Civ. 7019

  The plaintiffs, SHAJI MARKOSE and RAGITHA SHAJI, by their attorney, MICHAEL DIEDERICH, JR., ESQ., complain of the defendants CITIBANK NATIONAL ASSOCIATION and U.S. BANK NATIONAL ASSOCIATION, as follows:

<u>THE PARTIES</u>

  1. That at all relevant times hereinafter mentioned, Plaintiff **Shaji Markose** (hereinafter "Plaintiff Markose") was, and still is, a resident of the County of Rockland, State of New York.

  2. That at all relevant times hereinafter mentioned, Plaintiff **Ragitha Shaji**, also known as Ragitha Markose was, and still is, a resident of the County of Rockland, State of New York. Plaintiff Shaji is Plaintiff Markose's wife.

  3. That at all times hereinafter mentioned, defendant **Citibank National Association**, otherwise known as Citibank, N.A." (hereinafter referred to as "Citibank") was a national banking association is organized under the laws of the State of Delaware, has its principal place of business in Sioux Falls, South Dakota.

1

4. That at all times hereinafter mentioned, defendant Citibank was duly licensed and registered to conduct business in the State of New York.

5. That at all times hereinafter mentioned, defendant Citibank was and still is engaged in providing banking services to retail customers, with a branch serving local customers in New City, New York, including the plaintiffs.

6. That at all times hereinafter mentioned, defendant **U.S. Bank National Association**, otherwise known as U.S. Bank, N.A. (hereinafter referred to as "U.S. Bank") was and still engaged in providing banking-related services.

7. That at all times hereinafter mentioned, defendant U.S. Bank was and still is engaged in providing banking services within the State of New York and was duly approved by New York State Department of Financial Services to provide certain financial services within the State of New York.

8. That at all times hereinafter mentioned, defendant U.S. Bank was and still is incorporated in the State of Delaware and has its principal place of business located at 425 Walnut Street, Cincinnati, OH 45202-3923.

## JURISDICTION AND VENUE

9. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

10. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

11. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391 because Plaintiffs are located in this District, a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

**FACTUAL ALLEGATIONS**

12. On or about August 17, 2018, Plaintiff Markose and his wife, Plaintiff Shaji, were scheduled to close on the purchase of a new home, to wit, real property located in the State of New York. Various parties were involved in the transaction: Plaintiffs' attorney (buyer's attorney), seller, seller's attorney, and a mortgage banker.

13. In view of the impending closing date, Plaintiffs anticipated receipt of further instructions regarding the real estate transaction. Plaintiff received a series of emails on August 14, 2018 that appeared to be sent by the mortgage broker, copied to what appeared to be Plaintiffs' attorney's email, as well as emails from what appeared to be Plaintiffs' attorney's office directing Plaintiffs to wire funds required for the closing on the new home to "Darrion ,House Law", the account holder of US Bank Account number: 103685341879.

14. The above-described email conversation directing Plaintiff Markose to wire monies was fraudulent, an imposter evidently having hacked into one of the email accounts/servers of one of the parties involved in this real-estate transaction. Shortly after receiving the fraudulent emails, Plaintiff Markose entered a Citibank branch located at 170 North Main Street, New City, New York, and informed a Citibank employee that he wished to place a wire transfer in the amount of approximately $133,000 in connection with the purchase of a new home.

15. Plaintiffs had been customers of said branch for nearly twenty years.

16. Plaintiff Markose approached a Citibank representative employed at said Citibank local bank branch. He informed the representative that Plaintiffs wished to place a wire transfer and wanted to know what he needed to do to execute the wire transfer, as he had never wired

3

money previously. The representative was aware that the wire transfer amount was in fact available, leaving a balance of about $45,000 remaining in the account.

17. At no time did the Citibank representative request that Plaintiff Markose sign any document to authorize said wire transfer. Upon information and belief, plaintiffs never signed any documents relating to wire transfers at any time during the period in which Plaintiffs maintained the account.

18. At no time during the course of the subject transaction did the Citibank representative inform Plaintiff Markose that Defendant Citibank would be relying solely on the information provided by Plaintiff Markose to initiate the wire.

19. Nor did the Citibank representative inform Plaintiff Markose as to whether or not Defendant Citibank would be relying on the receiving bank to follow established banking policy and governmental regulation to verify that the name of the account holder that Plaintiff Markose provided, and to insure that the name of the account holder of the account number provided by Plaintiff Markose would match that of the recipient.

20. Plaintiff Markose orally told a Citibank representative at its local branch that he wanted his funds transferred to "DARRION HOUSE LAW", U.S. Bank account number 103685341879.

21. This name and account number were provided to him by fraudsters.

22. Based upon Plaintiff Markose's oral request, a wire transfer was executed by the Citibank representative.

23. As longtime retail customers of Citibank, Plaintiffs assumed that, as their fiduciary, the Citibank representative(s) would have informed Plaintiff Markose material discrepancies. The name of the account holder, "DARRION D HOUSE, JOO" of the account

U.S. Bank account number 103685341879(account title: "GIANT LUXURY EVENT PLANNING, LTD") did not match the account name that Plaintiff Markose had provided to Citibank.  Plaintiff Markose provided the name "DARRION HOUSE LAW", which he reasonably assumed to be a law firm.

24. Upon information and belief, Citibank was not made aware of this name discrepancy by U.S. Bank.

25. Assuming  that Citibank was made aware of the discrepancy by the wire transfer department of U.S. Bank, Plaintiff Markose reasonably would have expected that immediate corrective action would be taken.

26. Unbeknownst to Plaintiffs (because neither Citibank nor U.S. Bank informed them), the account title for the U.S. Bank account bearing the account number 103685341879 to which plaintiff was fraudulently directed to wire funds bore the account name: "GIANT LUXURY EVENT PLANNING, LTD," and the account holder "DARRION D. HOUSE, JOO".

27. On August 14, 2018, Citibank personnel at the local bank branch in fact provided Plaintiff Markose with a printed receipt indicating that a wire transfer of Plaintiffs' monies in the sum of approximately $133,000 was directed to account number 103685341879, to an account holder named "DARRION HOUSE LAW" (as per Plaintiff Markose's prior oral instruction).

28. Plaintiffs did not authorize Citibank to issue a wire transfer to an account named "Giant Luxury Event Planning LLC."

29. Nor did Plaintiffs authorize Citibank to issue a wire transfer to an account holder named "Darren D. House, Joo."

30. Nevertheless, and without authority, Citibank and U.S. Bank (upon information and belief acting jointly and severally) allowed a wire transfer of over $133,000 of Plaintiffs'

monies to be improperly processed by U.S. Bank and paid to an unauthorized person (a fraudster).

31. Defendant U.S. Bank, particularly its employees in the wire transfer department, were on notice that the sender's intended beneficiary name did not match the name on the account number provided and therefore should have issued a "soft decline" to Citibank requesting a clarification before releasing the wired funds to the criminal imposter.

32. Moreover, U.S. Bank's computer technology should have alerted its personnel to this potential fraud.

33. Alternatively, if U.S. Bank did issue such notice to Citibank, then Citibank was obligated to immediately communicate the discrepancy to Plaintiffs and also to instruct U.S. Bank to suspend any cash disbursement.

34. At Plaintiffs' real estate closing on August 17, 2018, Plaintiffs learned of the fraud and that most of their life savings had been wired to a fraudster—a criminal imposter—and that over $66,000 of their life savings had already been stolen.

35. The specifics of the U.S. Bank distribution of the wire transfer are as follows: On August 15, 2018, the criminal imposter first made two separate cash withdrawals of $2,500, for a total of $5,000. The imposter then requested a third cash withdrawal, in the sum of $9,800. With the third cash withdrawal, the total amount requested to be withdrawn amounted to $14,800, which was a daily aggregate that was required by federal law to have triggered a reporting obligation of the part of U.S. Bank.

36. The attempted cash withdrawal of over $10,000 in one day from U.S. Bank should have triggered suspicious activity alerts.

37. Instead of adhering to its own guidelines and to federal and state laws, rules and regulations, on August 15, 2018, U.S. Bank permitted one person to make multiple cash withdrawals, which this fraudster escalated in ever-increasing larger amounts,: $2,500; $2,500; $9,800; $9,800, $12,000; and $30,000, all in one calendar day, evidently by the same individual, at various branches in Colorado Springs, Colorado, each branch located within miles of each other.

38. The "one person" referenced in the prior paragraph was a fraudster—an imposter.

39. Had defendant U.S. Bank complied with federal laws, rules and regulations requiring that cash withdrawals equal to or greater than $10,000 be reported, Plaintiffs have been able to recover most of their monies.

40. Besides the *per se* negligence of U.S. bank described above, U.S. Bank was also negligent in its creation of the fraudster's account. Specifically, on or about August 6, 2018, U.S. Bank, violating its own guidelines and without appropriate vetting, opened account bearing the account number 103685341879 naming "Darrion D House, JOO" as the account holder.

<u>U.S. Bank's per se negligence in losing Plaintiffs' funds</u>

41. The recipient bank acted with negligence in several respects.

42. First, it did not vet the person who opened this account on August 6, 2018.

43. Rather, it allowed a fraudster to open the account without adequately and properly establishing the fraudster's identity. This negligence allowed the fraudster to perpetrate a fraud, and proximately cause Plaintiffs' losses, as the fraudster absconded with Plaintiffs' funds.

44. Second, federal banking law prohibits a bank from allowing the withdrawal of $10,000 or more in cash without a written declaration from the withdrawing person.

45. Thus, the moment that U.S. Bank was asked to withdraw more than $10,000 from the "Darren D. House, Joo" account, "bells and whistles" should have gone off in U.S. Bank's security system, identifying account 103685341879 as suspect and alerting U.S. Bank personnel electronically that no daily cumulative withdrawal totaling $10,000 or more could be allowed without first obtaining a signed declaration from the authorized account holder. This did not occur, and therefore amounts to *per se* negligence on the part of U.S. Bank.

46. Specifically, the person withdrew $2,500, and then $2,500 again, totaling $5,000.

47. The person's next withdrawal was for $9,800, which withdrawal should have been prohibited unless mandatory declarations had been executed by the individual attempting to withdraw such funds.

48. By permitting the third withdrawal, U.S. Bank allowed daily cumulative withdrawals of $14,800, which exceeds the $10,000 limit.

49. Third, the wire department at U.S. Bank should have advised Citibank about the discrepancy between the name of the account holder on Plaintiff Markose's wire transfer request and the account holder on the U.S. Bank account.

**FIRST CLAIM FOR RELIEF:**
**NEGLIGENCE (DEFENDANT CITIBANK)**

50. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

51. When Plaintiffs opened their bank account with Citibank, and deposited large sums of money entrusting same to Citibank's care and handling, Citibank owed Plaintiff a duty of reasonable care and due diligence, as well as covenants of good faith and fair dealing implied in the Terms and Conditions entered into with Citibank

52. Plaintiffs performed all obligations, conditions and agreements imposed by such agreement entered into with Citibank

53. Citibank owed a duty of reasonable care toward Plaintiffs, and owed them a duty to follow Citibank's own policies and procedure in preventing the instant theft and fraud Plaintiffs, Citibank's customers.

54. Upon information and belief, unauthorized ACH transfers, unauthorized wire transfers, fraudulent accounts, fraudulent checks, money laundering and other unauthorized bank activity are so pervasive that Citibank has established protocols to detect and prevent these transgressions.

55. Citibank is obligated by federal statutes, rules and regulation under the Bank Secrecy Act, 12 CFR Part 1005 (Regulation E) and other federal and state legislation to develop effective internal procedures to assess security risk through continual updating of its fraud-detection protocols, and to report suspicious activity to federal regulators.

56. Citibank did not, upon information and belief, apply a commercially reasonable security procedure to protect its customers from unauthorized payment orders as required by federal and state laws, rules and regulations, and more particularly, New York Uniform Commercial Code Sec 4-A-202.

57. Citibank had a commercially reasonable security procedure that was supposedly in place to protect to wire transfers. In this case, the Defendant Citibank failed to apply its own security policies and procedures to prevent the theft of Plaintiffs' monies.

58. Citibank failed to obtain a written wire transfer request signed by Plaintiff Markose.

59. If Citibank received a "soft decline" from Defendant U.S. Bank indicating that there was a discrepancy between the sender's intended beneficiary and the account designated on

the wire transfer transmission, then Citibank negligently failed to notify Plaintiff of said discrepancy.

60. Had Citibank received information from U.S. Bank regarding a discrepancy between the title or account holder of the account number that was provided by Plaintiff Markose that, as regards account numbered 103685341879, ABA #102000021, the name of the account was "GIANT LUXURY EVENT PLANNING, LTD" and the name of the account holder was "DARRION D HOUSE, JOO", and had failed to notify Plaintiff Markose of this discrepancy, Defendant Citibank would not have given Plaintiff Markose the opportunity to review the emails that directed him to make this fraudulent wire transfer, and then cancel the wire transfer before the funds were deposited to account of a fraud.

61. There was no account holder of beneficiary U.S. Bank bank account numbered 103685341879 named "Darrion House Law".

62. As a direct result of Citibank's failure to follow established fraud prevention protocols, Plaintiffs suffered substantial, significant financial losses and damages, in the sum of $66,600, the sum that the imposter was able to withdraw at U.S. Bank prior to the wire recall on or about August 17, 2018, plus consequential damages including but not limited to damages for increased closing costs, mental distress and emotional damages, and punitive damages for Defendant's gross negligence and reckless disregard for Plaintiffs rights.

## SECOND CLAIM FOR RELIEF:
## BREACH OF FIDUCIARY DUTY (DEFENDANT CITIBANK)

63. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

64. As Plaintiffs' banker, Citibank undertook to act as Plaintiffs' agent. As a matter of law, a fiduciary relationship arose between Citibank and Plaintiffs pursuant to which said Citibank owed duties of good faith, due care, loyalty, and full disclosure to Plaintiffs.

65. As set forth above, Plaintiffs were longtime customers of the Citibank and in fact had sought to obtain a mortgage at the local bank branch of Citibank in New City, New York. Such a relationship, necessarily fact-specific, is creates a higher level of trust than normally present in arm's length marketplace business transactions. This fiduciary relationship existed in that Citibank was under a duty to act for or to give advice for the benefit of Plaintiffs upon matters within the scope of the relationship.

66. Given the Plaintiffs' long-standing consumer relationship with the local Citibank branch and plaintiff's reliance upon and trust in Citibank's representatives, Citibank owed a duty towards Plaintiffs to take commercially reasonable steps to prevent fraud. In reasonable reliance on the Citibank's omissions in failing, as required by terms and conditions established by Defendants, to execute a written authorization to make a wire transfer of a substantial portion of Plaintiffs' life savings, Plaintiff Markose in reliance on Citibank requested Citibank to wire Plaintiffs' monies to an account that was later revealed to be an impostor at U.S. Bank.

67. Upon information and belief, Citibank representatives reasonably knew, and could reasonably anticipate that Plaintiffs would be relying on defendant Citibank's policies and procedures, along with compliance with state and federal regulations to prevent fraudulent bank transactions.

68. The foregoing omissions were material, and in violation of pertinent provisions of New York Uniform Commercial Code Article 4A, having failed to have in place a "security procedure" was a "commercially reasonable" method of providing security against unauthorized payment orders, that would help protect naïve consumers from hackers seeking to defraud Citibank customers.[1]

---

[1] Specifically, New York UCC § 4A-201 provides that:

69. Such failure and omission were in violation of state or federal banking laws, rules, regulations and guidelines relating to the above referenced wire transfer procured by fraudulent means, on or about August 14, 2018.

70. U.S. Bank failed to utilize appropriate protocols and safeguards to verify the true identity of the account holder named in the beneficiary account held by Defendant U.S. Bank.

71. U.S. Bank breached its fiduciary duties to Plaintiffs, which caused and continues to cause Plaintiffs substantial injury and harm.

72. Accordingly, Plaintiffs seek to recover an award of actual damages due to the U.S. Bank and Citibank's breach of fiduciary duty, in the sum of $66,600, the sum that the imposter was able to withdraw prior to the wire recall on or about August 17, 2018, and consequential damages, including increased closing costs and damages for mental distress and emotional harm.

73. Furthermore, because Citibank's breach of fiduciary duty was egregious, Plaintiffs seek to recover an additional sum in the form of punitive damages.

### THIRD CLAIM FOR RELIEF:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (DEFENDANT CITIBANK)

74. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

75. As set forth above, Citibank's acts, omissions and failures in the executing the wire transfer, which monies represented a substantial part of the Plaintiffs' savings, caused each Plaintiff to experience great physical suffering and a penetrating sense of loss and hopelessness

---

"Security procedure" means a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure.

as to their family's future. Plaintiffs suffered severe mental and emotional distress after they learned that, due to Citibank's negligence, their life savings had been stolen and lost.

76. The emotional distress suffered by all Plaintiffs was severe and of such a nature that no reasonable person could be expected to endure it. Defendant knew, or should have known, that failure to exercise due care in the performance of its obligations to plaintiffs, longtime customers of Citibank, would cause plaintiff severe emotional distress. As a proximate result of said Defendant's actions, and reckless and careless disregard for the likelihood of causing emotional distress to all Plaintiffs, without limitation, caused all Plaintiffs to suffer extended and increasing emotional distress.

77. As a further proximate result of said Defendant Citibank's actions and omissions, and the consequences proximately caused by them, plaintiffs suffered severe emotional distress and mental suffering, all to each Plaintiff's damage in the sum of $50,000 each.

**FOURTH CLAIM FOR RELIEF:**
**NEGLIGENCE TOWARD PLAINTIFFS AS THIRD-PARTY BENEFICIARIES**
**(DEFENDANT U.S. BANK N.A.)**

78. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

79. The Defendant U.S. Bank, in violation of Colorado Revised Uniform Commercial Code §§ 3-404 through 3-406 ("Lack of Ordinary Care and Good Faith") 12 CFR Part 1005 (Regulation E) and Article 4A-§203, Article 4-4.5-§207 and related federal and state laws, rules and regulations, including but not limited to UCC regulations, was negligent per se and otherwise negligently failed to properly vet and properly identify its new account holder, "Darrion D. House, JOO" which account evidently was created for unlawful purposes.

80. Additionally, it appears that U.S. Bank failed in its reporting obligations under the Bank Secrecy Act, 12 CFR Part 1005 (Regulation E) and other federal and state statutes and

regulations promulgated to halt money laundering and to disrupt funding from reaching terrorist organizations.

81. At a minimum, U.S. Bank failed in its duty to take affirmative action to react appropriately or in a timely manner to a highly suspect pattern of cash withdrawals, which, prior to the deposit of plaintiffs' funds into the account managed by the imposter at said defendants' depository bank, were, upon information provided by law enforcement, was modest in scale, namely two withdrawals, each less than one-hundred dollars. Furthermore, the fraudulent account opened up only days before the crime occurred, had in account a minimal deposit of less than two-hundred dollars.

82. Upon information and belief, U.S. Bank violated UCC "security provisions" similar to New York UCC § 4A-201 referenced above, which provisions, because they apply to the "receiving bank," also make the originating customer a third party beneficiary of the acts or omissions of the receiving bank.

83. If U.S. Bank failed to issue a "soft decline or recall" of the wire transfer from Citibank regarding the discrepancy between the sender's intended beneficiary and the account designated on the wire transfer transmission, then U.S. Bank negligently failed to notify Citibank of said discrepancy, thus depriving Plaintiffs of the opportunity to request a wire recall that would have protected them against the larceny by the criminal imposter.

84. On August 15, 2018, the multiple cash withdrawals by the imposter at U.S. Bank escalated in ever-increasing larger amounts, to wit: $2500; $2500; $9800; $9800, $12,000; and $30,000, in one calendar day, evidently by the same individual, at various branches within miles of each other.

85. U.S. Bank failed to act promptly once a suspicious pattern of cash withdrawals totally more than $10,000 in the aggregate (amounting to a total of around $66,000 cash which were made on August 15, 2018, by the same individual, from various U.S. Bank branches located in proximity to one another. Indeed, U.S. Bank permitted a daily withdrawal beginning with the third withdrawal of $9,800. Had U.S. Bank complied with federal laws requiring that cash withdrawals equal to or greater than $10,000 be reported, plaintiffs may have been able to recover most of their monies.

86. U.S. Bank failed to act promptly once a suspicious pattern of cash withdrawals totaling $10,000 or greater in the aggregate (amounting to a grand daily total of six separate withdrawals, totaling around $66,000 which were made on August 15, 2018, by the same individual, from various U.S. Bank branches located in proximity to one another.)

87. Indeed, U.S. Bank violated federal laws, rules and regulations when it permitted a third withdrawal on the same day of $9,800. Thus, the moment that U.S. Bank was asked to process a cash withdraw more than $10,000 from the Darren D. House, Joo" account, "bells and whistles" should have gone off in U.S. Bank's system, preventing such cash withdrawal without a signed declaration by an authorized account holder. This did not occur, and therefore amounts to per se negligence on the part of U.S. Bank.

88. As such, U.S. Bank committed negligence *per se*, violated federal law, rules and regulation, violated the Uniform Commercial Code provisions of state law, and also failed to abide by its own internal guidelines established in response to a consent agreement reached between U.S. Bank and FinCEN[2] in early 2018 for U.S. Bank's previous failure to file suspicious activity reports, among other things.

---

[2] See, https://www.fincen.gov/news/news-releases/fincen-penalizes-us-bank-national-

89. U.S Bank's failure to prevent more than $10,000 in cash to be withdrawn by the imposter on the same day also amounted to negligence *per se*, because federal law prohibited such withdrawals, yet U.S. Bank negligently allowed such withdrawals.

90. As a direct result of U.S. Bank's failure to follow established fraud prevention protocols, Plaintiffs suffered substantial, significant financial losses and damages in the amount of approximately $66,600 the sum that the imposter was able to withdraw prior to the wire recall on or about August 17, 2018.

### FIFTH CLAIM FOR RELIEF:
### CONVERSION (DEFENDANT U.S. BANK)

91. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

92. As set forth above, in violation of federal and state banking laws, rules and regulations, including but not limited to violations of Colorado Revised Statutes Titles 3 and 4 of the Uniform Commercial Code § 3-404, § 4-4.5-207 and § 4-4.5-303. U.S. Bank accepted the wire transfer despite its lack of authority.

93. U.S. Bank failed to enforce a commercially reasonable security procedure opening an account without authenticating the true identity of the account holder and by failing to take measures designed to detect fraud for loss prevention; by depositing funds designated for an account holder whose name was different from that in the wire transfer order; by permitting the imposter to withdraw tens of thousands of dollars, despite federal and state laws, rules and regulations prohibiting same.

94. U.S. Bank thus wrongfully took possession of (whether as a bailment or otherwise) and then disbursed Plaintiffs' monies without legal authority. That such failures and

association-violations-anti-money-laundering.

omissions on the part of said defendant led to the conversion of plaintiffs' monies, and strict liability as a bailment.

95. As a direct result of said Defendant's failure to follow established fraud prevention protocols, Plaintiffs suffered substantial, significant financial losses and damages in the amount of $66,600, the sum that the imposter was able to withdraw prior to the wire recall on or about August 17, 2018, plus consequential including emotional damages.

### SIXTH CLAIM FOR RELIEF:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (DEFENDANT U.S. BANK)

96. Plaintiffs repeat the allegations set forth in the preceding paragraphs.

97. As set forth above, U.S. Bank's acts, omissions and failures in the accepting the wire transfer, which monies represented a substantial part of the Plaintiffs' life savings, caused each plaintiff to experience great physical suffering and a penetrating sense of loss and hopelessness as to their family's future.

98. The emotional distress suffered by all Plaintiffs was severe and of such a nature that no reasonable person could be expected to endure it. U.S. Banks's personnel knew, or should have known, that failure to exercise due care in the performance of its obligations to plaintiffs under the banking laws and related rules and regulations, would cause third party beneficiary banking customers, such as the Plaintiffs herein, severe emotional distress.

99. As a proximate result of U.S. Bank's actions, and reckless and careless disregard for the likelihood of causing emotional distress to all Plaintiffs, without limitation, caused all Plaintiffs to suffer extended and increasing emotional distress.

100. As a further proximate result of U.S. Bank's acts and omissions, and the adverse consequences to Plaintiffs proximately caused by such acts and omissions, Plaintiffs suffered

severe emotional distress and mental suffering, all to Plaintiffs' damage in the sum of $50,000 each, above and beyond their $66,000 in lost bank funds and other consequential damages.

WHEREFORE, Plaintiffs pray that this Court grant judgment to them containing the following relief:

a. An award of Plaintiffs' actual economic damages, plus interest, and consequential damages;
b. An award of damages to be determined at trial to compensate Plaintiff for mental distress, anguish and emotional injury;
c. An award of punitive damages;
d. An award of reasonable attorneys' fees and the costs of this action; and
e. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial in this action.

Dated: Stony Point, New York
July 26, 2019

        /S /
MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff   MD 2097*
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com

.