**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

SHAJI MARKOSE and RAGITHA SHAJI,

Plaintiffs,

v.

CITIBANK NATIONAL ASSOCIATION and U.S. BANK NATIONAL ASSOCIATION,

Defendants.

Civil Action No.: 7:19-cv-07019-CS

# MEMORANDUM OF LAW OF DEFENDANT U.S. BANK NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION TO DISMISS

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT MATERIAL FACTS .......... 2

III. ARGUMENT .......... 5

A. Applicable Legal Standard .......... 5

B. The "Negligence Toward Plaintiffs as Third-Party Beneficiaries" Claim is Without Merit .......... 5

C. Plaintiffs' Conversion Claim is Without Merit .......... 17

D. Plaintiffs' Negligent Infliction of Emotional Distress Claim is Without Merit .......... 18

IV. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Cases**

*Acevado v. Citibank, N.A.*,
2012 U.S. Dist. LEXIS 40242 (S.D.N.Y. Mar. 23, 2012) ........ 17

*Ancile Inv. Co. v. Archer Daniels Midland Co.*,
784 F. Supp. 2d 296 (S.D.N.Y. 2011)........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 5

*Baker v. Dorfman*,
239 F.3d 415 (2d Cir. 2000)........ 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 5

*Bovsun v. Sanperi*,
61 N.Y.2d 219 (1984) ........ 18

*Burnett v. Al Baraka Inv. Dev. Corp.*,
274 F. Supp. 2d 86 (D.D.C. 2003) ........ 7

*Century Bus. Credit Corp. v. North Fork Bank*,
246 A.D.2d 395 (1st Dep't 1998) ........ 7

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........ 3

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987) ........ 6

*Donmar Enters., Inc. v. S. Nat'l Bank of N.C.*,
828 F. Supp. 1230 (W.D.N.C. 1993) ........ 16

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)........ 5

*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011)........ 6

*Encore Lake Grove Homeowners Assn., Inc. v. Cashin Assoc., P.C.*,
111 A.D.3d 881 (2d Dep't 2013) ........ 6

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
414 F.3d 325 (2d Cir. 2005)........ 12

*Frankel-Ross v. Congregation Ohr Hatalmud*,
2016 U.S. Dist. LEXIS 128342 (S.D.N.Y. Sept. 13, 2016)........ 13, 14, 16

*Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*,
160 F.3d 146 (2d Cir. 1998)........ 17

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)........ 16

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................................................................ 7

*Johnson v. Chase Manhattan Bank*,
2000 U.S. Dist. LEXIS 5587 (S.D.N.Y. April 27, 2000) ........................................................ 7

*Johnson v. State*,
37 N.Y.2d 378 (1975) ........................................................................................ 19

*Lauer v. City of New York*,
95 N.Y.2d 95 (2000) ........................................................................................ 6

*Law Offices of Oliver Zhou v. Citibank N.A.*,
2017 U.S. Dist. LEXIS 35307 (S.D.N.Y. Mar. 10, 2017) ........................................................ 10

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
597 F. 3d 84 (2d Cir. 2010)........................................................................................ 11

*Pasternack v. Lab. Corp. of Am.*,
892 F. Supp. 2d 540 (S.D.N.Y. 2012)........................................................................ 6

*Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*,
2019 U.S. Dist. LEXIS 148632 (S.D.N.Y. Aug. 30, 2019) ........................................................ 10

*Renner v. Chase Manhattan Bank*,
1999 U.S. Dist. LEXIS 978 (S.D.N.Y. Feb. 3, 1999)........................................................ 8

*Sea Trade Co. v. FleetBoston Fin. Corp.*,
2004 U.S. Dist. LEXIS 18148 (S.D.N.Y. Sept. 9, 2004)........................................................ 5

*Tzaras v. Evergeen Int'l. Spot Trading, Inc.*,
2003 U.S. Dist. LEXIS 2707 (S.D.N.Y. Feb. 25, 2003)................................................ 7, 9, 16

*United States v. $79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*,
1996 U.S. Dist. LEXIS 16536 (S.D.N.Y. Nov. 6, 1996)........................................................ 10

*World Trade Ctr. Props. LLC v. Am. Airlines, Inc.*,
905 F. Supp. 2d 547 (S.D.N.Y. 2012)........................................................................ 6

**<u>Statutes</u>**

28 U.S.C. § 1332........................................................................................ 19

N.Y. U.C.C. § 4A-102 ........................................................................................ 12

N.Y. U.C.C. § 4A-103 ........................................................................................ 11

N.Y. U.C.C. § 4A-203 ........................................................................................ 11

N.Y. U.C.C. § 4A-207 ........................................................................................ 12-14

N.Y. UCC § 4A-402 .......... 15
C.R.S. § 4-3-406 .......... 10
C.R.S. § 4-4.5-207 .......... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1-2

Defendant U.S. Bank National Association ("U.S. Bank") respectfully submits the following memorandum of law in support of its motion to dismiss plaintiff Shaji Markose and Ragitha Shaji's (together, the "Plaintiffs") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"):

## I. INTRODUCTION

Plaintiffs were the victims of a fraudster who seemingly hacked into their mortgage broker's email account and sent an email to Plaintiffs directing them to wire funds to a U.S. Bank account number belonging to "Darrien House Law." Plaintiffs were preparing to complete a real estate transaction, and believed that that account belonged to a lawyer associated with the sale. In actuality, the account holder was not a lawyer and the name on the account was "Darrien D House, JOO." Based on the fraudulent inducement, Plaintiffs directed their bank, co-defendant Citibank, N.A., to wire $133,000 to the U.S. Bank account. A short time later, Plaintiffs discovered that the email was fake and the funds were in the possession of the fraudster. By the time Plaintiffs alerted their bank, the fraudster had withdrawn some $66,000 from the account (Plaintiffs received the balance).

As a result, Plaintiffs allege three causes of action against U.S. Bank. The first is a mixed claim of negligence by way of a third-party beneficiary theory based on U.S. Bank purportedly having been under a consent decree with the U.S. Treasury Department and Comptroller of the Currency, or having supposedly failed to vet properly the account opening, or due to alleged violations of various provisions of the Uniform Commercial Code. Each of these claims, regardless of how formulated, fails as a matter of law because New York courts have uniformly and consistently held that banks do not owe duties of care to non-customers, and without a duty there can be no negligence. Plaintiffs were clearly not customers of U.S. Bank. Therefore, U.S. Bank owed them no duty, regardless of the extent of its purported negligence. Plaintiffs' claim

based on the Uniform Commercial Code fails because U.S. Bank followed the relevant provisions and did not have actual knowledge that the name on Plaintiffs' wire transfer order differed from that on its account.

Plaintiffs also allege a conversion claim. However, conversion is an intentional tort and Plaintiffs do not allege that U.S. Bank ever acted intentionally. Moreover, New York law is clear that funds on deposit with a bank may not be the subject of a conversion claim.

Lastly, Plaintiffs allege a claim for negligent infliction of emotional distress. The Court should dismiss this claim because New York law requires a showing that the negligent act endangered a plaintiff's physical safety. Here, as an initial matter, U.S. Bank could not have been negligent toward Plaintiffs because it owed no duty to them. Moreover, nothing that U.S. Bank did endangered Plaintiffs' physical safety.

For these reasons, and for those set forth in detail below, the Court should dismiss this action with prejudice as against U.S. Bank.

## II. STATEMENT OF RELEVANT MATERIAL FACTS

Because the Motion is one pursuant to Fed. R. Civ. P. 12(b)(6), the following facts drawn from the Amended Complaint (the "Complaint") (annexed to the Declaration of Daniel Ginzburg ("Ginzburg Decl.") as Exhibit 1) are deemed true for purposes of the Motion only.

1. On or about August 6, 2018, U.S. Bank opened an account for "GIANT LUXURY EVENT PLANNING LTD." for account holder "DARRION D HOUSE, JOO." (Complaint ¶ 12 (capitalization in original)).

2. Plaintiffs allege that U.S. Bank should not have opened an account for "Darrion D. House, JOO" because no such person exists. (Complaint ¶ 12). But the signature card for the

account[1] is signed by "Darrion D. House" without the "JOO" suffix. (Ginzburg Decl., Ex. 2 – Signature Card). Thus, the "JOO" suffix may either be a typo or Mr. House's corporate title within the business.

3. On or about August 17, 2018, Plaintiffs were scheduled to close on the purchase of a new home. (Complaint ¶ 18).

4. A few days prior, plaintiff Shaji Markose ("Markose") received a series of emails that appeared to originate from his mortgage broker, directing him to wire funds to "Darrion House Law," account holder of U.S. Bank account number x1879. (Complaint ¶ 19).

5. Believing the emails to be valid and sent in connection with the upcoming closing, Markose visited a branch of co-defendant Citibank National Association ("Citibank") and directed one of its employees to wire funds as specified in the emails to "Darrion House Law," U.S. Bank account number x1879. (Complaint ¶¶ 20, 22).

6. Plaintiffs allege that U.S. Bank should have detected that the name of the beneficiary on the wire transfer (Darrion House Law) did not match the name of the account holder on the x1879 account (Darrion D. House, JOO) or the owner of the account (Giant Luxury Event Planning, Ltd.). (Complaint ¶ 24).

7. Plaintiffs allege that had U.S. Bank properly verified Mr. House's identity, it would not have opened the x1879 account because the Articles of Organization for Giant Luxury Event

---

[1] Although the Motion is one pursuant to Rule 12(b)(6), the Court may consider the signature card because Plaintiffs relied on it in filing this action. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" (internal quotation marks and alterations omitted)).

Planning, Ltd. "included details at significant variance with the name of the account holder." (Complaint ¶ 28).

8. In fact, the Articles of Organization for Giant Luxury Event Planning do identify Darrion House as the individual who filed the document, and at the same address. (Ginzburg Decl., Ex. 3 – Articles of Organization at 3).

9. Plaintiffs did not discover the fraud until their real estate closing on August 17, 2018. (Complaint ¶ 34).

10. In the meantime, however, the fraudster, possibly Mr. House, made several cash withdrawals from the x1879 account. (Complaint ¶ 35).

11. Specifically, on August 15, 2018, the fraudster made two separate cash withdrawals of $2,500, then two separate withdrawals of $9,800, followed by withdrawals of $12,000 and $30,000. (Complaint ¶¶ 35-36). Plaintiffs allege that withdrawal of an amount exceeding $10,000 in one day should have triggered a reporting requirement pursuant to federal law. (*Id.* ¶ 35).

12. According to Plaintiffs, there was minimal account activity in account x1879 prior to the withdrawals. (Complaint ¶ 37).

13. Plaintiffs also make allegations concerning a Consent Order between the U.S. Treasury Department and Office of the Comptroller of the Currency and U.S. Bank relating to various U.S. Bank's security compliance measures, and a later Deferred Prosecution Agreement. (Complaint ¶¶ 13-17).

## III. ARGUMENT

### A. Applicable Legal Standard

On a motion to dismiss, the Court should accept all facts alleged in the Complaint as true and construe all reasonable inferences in Plaintiffs' favor. *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Notwithstanding that treatment, a pleading must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). To survive a motion to dismiss, therefore, the Court must find that Plaintiffs' claims rest on factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully" (quotation marks omitted)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. The "Negligence Toward Plaintiffs as Third-Party Beneficiaries" Claim is Without Merit

Plaintiffs' first claim against U.S. Bank is that it was negligent with respect to Plaintiffs as third-party beneficiaries. (Complaint, Fourth Count). The Complaint does not allege the contract of which Plaintiffs are third-party beneficiaries, but instead alludes to it being the wire transfer between Citibank and U.S. Bank. (*Id.* ¶ 68). More importantly, the Complaint does not explain how the contract-based third-party beneficiary concept interacts with their tort-based negligence theory. *See Sea Trade Co. v. FleetBoston Fin. Corp.*, 2004 U.S. Dist. LEXIS 18148, at *10 (S.D.N.Y. Sept. 9, 2004) (Keenan, J.) ("The third-party beneficiary concept arises from the

notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform." (citation and internal quotation marks omitted)). Further, "[m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 203 (S.D.N.Y. 2011) (Sullivan, J.) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 390 (1987)); *see also Encore Lake Grove Homeowners Assn., Inc. v. Cashin Assoc., P.C.*, 111 A.D.3d 881, 883 (2d Dep't 2013) ("[A] court enforcing a contractual obligation will ordinarily impose a contractual duty only on the promisor in favor of the promisee and any intended third-party beneficiaries. . . . Thus where a party is merely seeking to enforce its bargain, a tort claim will not lie." (citations and internal quotation marks omitted)). Thus, Plaintiffs' intermixing of contract and tort law concepts is legally invalid.

*i.* <u>Plaintiffs' Negligence Claim is Defective As a Matter of Law</u>

A duty owed by the defendant to the plaintiff is the preliminary element of a cause of action for negligence. *World Trade Ctr. Props. LLC v. Am. Airlines, Inc.*, 905 F. Supp. 2d 547, 553 (S.D.N.Y. 2012) (Hellerstein, J.) (stating that whether a duty exists is a "threshold question in any negligence action"). Without the existence of a duty there can be no liability for negligence, regardless of the extent of a party's carelessness or foreseeability of harm. *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 547 (S.D.N.Y. 2012) (Gardephe, J.) ("[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless or foreseeable the harm" (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000)).

It is a universally-accepted tenet of New York law that banks do not owe tort duties of care to non-customers in the commercial context.[2] *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 830 (S.D.N.Y. 2005) (Casey, J.) ("Banks do not owe non-customers a duty to protect them from the intentional torts of their customers."); *Tzaras v. Evergeen Int'l. Spot Trading, Inc.*, 2003 U.S. Dist. LEXIS 2707, at *18 (S.D.N.Y. Feb. 25, 2003) (Preska, J.) (finding that, "as a matter of law, bank owe[d] no duty of care to non-customer defrauded by bank customer"); *Century Bus. Credit Corp. v. North Fork Bank*, 246 A.D.2d 395, 396 (1st Dep't 1998) ("to hold that banks owe a duty to their depositors' creditors to monitor the depositors' financial activities . . . would be to unreasonably expand banks' orbit of duty"); *Johnson v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 5587, at *15 (S.D.N.Y. April 27, 2000) (Ellis, M.J.) ("The general rule is that a bank does not owe a duty to a non-customer third-party."); *Burnett v. Al Baraka Inv. Dev. Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service.").

The facts in *Tzaras* are very similar to those in this case. There, plaintiff Tzaras invested significant sums with a purported currency trading firm, defendant Evergreen, that Evergreen promised to deposit with JPMorgan Chase Bank ("Chase"). *Tzaras*, 2003 U.S. Dist. LEXIS 2707, at *3-4. Evergreen directed Tzaras to wire the funds into sub-accounts at Chase belonging to First Equity Enterprises, Inc. ("First Equity"), an affiliate of Evergreen. *Id.* at *5. Following the

[2] Banks do owe tort duties of care to invitees on their premises and in similar situations.

September 11, 2001 terrorist attacks, Tzaras learned that Evergreen was merely a sham entity created for the purpose of bilking investors, and had transferred most of the "invested" funds to secret bank accounts abroad. *Id.* at *6. In his pleadings, Tzaras alleged that in September 2000 Chase closed two of Evergreen's accounts due to suspicious activity, the same activities that were occurring in First Equity's accounts. *Id.* Echoing Plaintiffs in this case, Tzaras alleged that, "Notwithstanding its knowledge of the activities in the Evergreen accounts, Chase took no such similar action with respect to First Equity's account. Under the 'Know Your Customer' procedures and suspicious activity reporting requirements implemented in the Bank Secrecy Act . . . Chase was required to monitor and report such suspicious activities." *Id.* In his negligence claim against Chase, Tzaras alleged that Chase "knew that a conflict existed between Tzaras' wire transfer instructions, which made specific reference to [his] sub-accounts, and the actual accounts in existence at Chase during this period." *Id.* at *7. He asserted a negligence claim against Chase, alleging that it breached its duty of care by accepting wire transfers in violation of Article 4A of the New York Uniform Commercial Code ("UCC") and "in ignoring suspicious activities taking place in First Equity's account," which permitted the fraudsters to undertake their acts of conversion of theft. *Id.* at *7-8.

The court dismissed the negligence claim, finding that "Tzaras was not a customer of Chase. Chase's involvement extended only insofar as it allowed the wire transfer from Tzaras to First Equity, Chase's customer, to be completed." *Id.* at *18 (citing *Renner v. Chase Manhattan Bank*, 1999 U.S. Dist. LEXIS 978 (S.D.N.Y. Feb. 3, 1999) (Haight, J.)). The Court should rule likewise in this case. U.S. Bank's involvement extended only insofar as it allowed the wire transfer from Plaintiffs to the x1879 account to be completed. U.S. Bank had no other obligations

to Plaintiffs. *See Renner*, 1999 U.S. Dist. LEXIS, at *39-40 ("These circumstances reduce [plaintiff] Renner to the necessity of arguing that Chase owed him a duty to prevent Chase's customer, Townsend, from defrauding Renner. But it is well settled that a bank owes no such duty to a non-customer third-party.").

Plaintiffs also argue that U.S. Bank was negligent in permitting the fraudster to withdraw funds from his account in suspicious amounts, which, they allege, should have set off "bells and whistles" within U.S. Bank. (Complaint ¶ 63). But this merely parallels the situation in *Tzaras*, where plaintiff alleged that Chase did not close First Equity's accounts despite having one year earlier closed down those of Evergreen, First Equity's affiliate, due to suspicious transactions, which permitted the fraudsters to continue to transfer victims' money abroad. *Tzaras*, 2003 U.S. Dist. LEXIS 2707, at *6. Thus, regardless of the specific form of the alleged negligence, the guiding principle is that banks do not owe duties of care to non-customers. Plaintiffs were not customers of U.S. Bank, and therefore U.S. Bank owed no duty of care to them. Therefore, the negligence claim should be dismissed.

Plaintiffs' specific assertions of purported negligence fare no better. They "assume" that U.S. Bank should have been hypervigilant due to oversight by the Treasury Department and the Comptroller of the Currency, and that it was negligent by not vetting the person who opened the x1879 account. (Complaint ¶¶ 61-62). Plaintiffs offer no facts in support of the conclusory assertion that U.S. Bank did not vet its customer or establish his identity. The party opposing a motion pursuant to Rule 12(b)(6) "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated

speculation." *Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, 2019 U.S. Dist. LEXIS 148632, at *10 (S.D.N.Y. Aug. 30, 2019) (Seibel, J.) (internal quotation marks and citations omitted).

Plaintiffs also contend that U.S. Bank should have prevented the fraudster from withdrawing any more funds after reaching a $10,000 daily limit. (Complaint ¶ 63). They cite no statute or regulation requiring U.S. Bank to have taken any action in response to an attempt to withdraw more than $10,000 in one day. Instead, they re-assert that this was an example of U.S. Bank's negligence. But *Tzaras* and cases like it hold that banks do not owe duties to non-customers, and without a duty there can be no negligence.

Next, Plaintiffs allege that once U.S. Bank was supposedly on notice of a potential fraud, the monies in the x1879 account became a bailment and the responsibility of U.S. Bank. (Complaint ¶ 64). As an initial matter, bailment is a contractual concept. *Law Offices of Oliver Zhou v. Citibank N.A.*, 2017 U.S. Dist. LEXIS 35307, at *14 (S.D.N.Y. Mar. 10, 2017) (Ramos, J.) ("Bailment is a contractual arrangement and, as in any contract, both parties must assent to the relationship" (quoting *United States v. $79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*, 1996 U.S. Dist. LEXIS 16536, at *14 (S.D.N.Y. Nov. 6, 1996) (Mukasey, J.)). Thus, once more, Plaintiffs are mixing up contract and tort principles. Moreover, Plaintiffs do not allege, nor can they, that U.S. Bank ever assented to be the bailee of Plaintiffs' funds. Thus, insofar as the negligence claim is predicated on a bailment, it fails as a matter of law.

Plaintiffs then claim that U.S. Bank violated §§ 4-3-404 through 4-3-406, "4A-203" and 4-4.5-207 of the Colorado UCC, as well as unspecified "related federal and state laws, rules and regulations, including but not limited to UCC regulations," by improperly vetting the individual who opened the x1879 account. (Complaint ¶ 66). But §§ 4-3-404 through 4-3-406 deal with

negotiable instruments, not account opening processes. Negotiable instruments are not at issue in this case. Further, there is no "§ 4A-203" of the Colorado UCC.[3] And § 4-4.5-207, titled "Misdescription of beneficiary," which is discussed in section III.B.ii. below, deals with beneficiaries of wire transfers, not bank account openings. Thus, these provisions do not establish anything with respect to Plaintiffs' claims. Plaintiffs also cite § 4A-201 of the New York UCC (Complaint ¶ 68), but that section deals with "procedure[s] established by agreement of a customer and a receiving bank." As explained in Footnote 3, the receiving bank is Citibank, not U.S. Bank.

Lastly, though just as importantly, the UCC preempts common law negligence concepts insofar as they are inconsistent with the provisions of the UCC. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F. 3d 84, 89 (2d Cir. 2010) (holding that the drafters of the wire transfer sections of the UCC intended to reject the "piecemeal approach [of the common law] in favor of a more disciplined regime under which common law claims at odds with Article 4A are no longer permitted" (citations omitted)). Thus, insofar as Plaintiffs' claims are covered by § 4A of the New York UCC, or its equivalent Colorado UCC § 4-4.5, their common law claims are preempted. *Id.* ("Article 4A precludes customers from bringing common law claims inconsistent with the statute."). Plaintiffs' claims are covered by § 4A and § 4-4.5. Therefore, their negligence claims are precluded.

---

[3] If Plaintiffs were referring to § 4A-203 of the New York UCC, that section deals with obligations of the "receiving bank." The term "receiving bank" is defined as the "bank to which the sender's instruction is addressed." N.Y. UCC § 4A-103(1)(d). And "sender" is the "person giving the instruction to the receiving bank." *Id.* § 4A-103(1)(e). Thus, in this case, the sender was plaintiff Markose and the receiving bank is Citibank, not U.S. Bank.

*ii.* Plaintiffs' Claim For Violation of § 4A-207 of the New York UCC is Defective As a Matter of Law

The involvement of a funds transfer implicates Article 4A of the UCC.[4] *See* N.Y. U.C.C. § 4A-102. Pursuant to definitions within the UCC, Markose was the "sender" of the outgoing wire transfer at issue, Citibank was the "receiving bank," U.S. Bank was the "beneficiary bank," and Darrion D. House / Giant Luxury Event Planning, Ltd. was the "beneficiary." *See* N.Y. U.C.C. § 4A-102 through 104.

N.Y. U.C.C. § 4A-207 (titled "Misdescription of Beneficiary") states that if a payment order identifies the beneficiary by name and an account number, and the beneficiary's bank does not know that the name and number refer to different persons, it is entitled to rely on the number as the proper identification. Critically, the "beneficiary's bank need not determine whether the name and number refer to the same person." *Id.* § 4A-207(2)(a). If the beneficiary bank "knows" that the name and number identify different persons, then it should reject the payment order. *Id.* § 4A-207(2)(b). The UCC defines "knows" as having "actual knowledge." *Id.* § 1-202(b). Further, it is understood that banks will process wire transfers automatically, but they may rely on an account number even if they process wires manually. *Id.* § 4A-207 cmt. 2.

Here, Plaintiffs do not allege that U.S. Bank had "actual knowledge" of the difference between the account number and the name on the payment order, nor do they allege facts that could give rise to that reasonable inference. *See Frankel-Ross v. Congregation Ohr Hatalmud*,

---

[4] The wire transfer was from a bank based in New York to a bank based in Colorado. However, the Court will not need to perform a conflicts of law analysis because the relevant provisions of the UCC in both States are identical. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).

2016 U.S. Dist. LEXIS 128342, at *9 (S.D.N.Y. Sept. 13, 2016) (Buchwald, J.). The facts and claims in Frankel-Ross are almost identical to those in this case. *Id.* at *1-2. There, the plaintiff, induced by a fraudster into believing she was investing in a check cashing business, wired funds from her Wells Fargo account to an account at Chase pursuant to a wire transfer form that identified the beneficiary as "Ohr Hashabbos," located at 4901 13th Avenue in Brooklyn, and bearing account number x6106. *Id.* at *2. That account number actually belonged to "Cong. Ohr Hatalmud, Ohr Hashabbos & Ohr Kitov Inc.," which is located at 1482 41st Street in Brooklyn. *Id.* The Congregation obviously was not a check cashing business but a creditor of the fraudster, and accepted the wire transfer in satisfaction of a debt that the fraudster owed to it. *Id.* When the fraud came to light, plaintiff sued Chase for violation of § 4A-207 and for negligence. *Id.* at *6.

The court dismissed both claims with prejudice. Plaintiff claimed that Chase was liable under § 4A-207 because it knew that the name of the beneficiary on the wire transfer form and the name of the account holder were different. *Id.* at *7-8. And, "[i]f the beneficiary's bank pays the beneficiary despite knowing that the name and account number on the payment order 'identify different persons,' . . . then the originator's bank need not pay the beneficiary's bank, the originator need not pay its bank, and the [b]eneficiary's [b]ank takes the loss." *Id.* at *7 (quoting § 4A-207 cmt. 2) (internal quotation marks omitted and revisions in original). The court was not persuaded by the argument. It found that plaintiff had

> not sufficiently alleged that [Chase] had "actual knowledge" of the discrepancy. Even assuming that someone at [Chase] reviewed this payment order and noticed that the beneficiary is identified as "Ohr Hashabbos" and the account belonged to "Cong. Ohr Hatalmud, Ohr Hashabbos, & Ohr Kitov Inc," it is simply not plausible that, when

> confronted with this information, one would have actual knowledge that these two names referred to different persons. Frankel-Ross does not allege, for instance, that "Ohr Hashabbos" also had an account at [Chase] or any facts that make it plausible that anyone at [Chase] had any knowledge of Ohr Hashabbos. The names are simply too similar for this Court to reasonably infer that conclusion.

*Id.* at *9. Similarly, here, Markose's wire instructions identified the beneficiary as "Darrion House Law," holder of account number x1879. (Complaint ¶¶ 21-22). The name of the holder on the account was "Darrion D House, JOO." (*Id.* ¶ 24). Like the difference between a transfer to "Ohr Hashabbos" and the account holder being "Cong. Ohr Hatalmud, Ohr Hashabbos, & Ohr Kitov Inc," the difference between "Darrion House Law" and "Darrion D House, JOO" would not give a reviewer "actual knowledge that these two names referred to different persons." *Frankel-Ross*, 2016 U.S. Dist. LEXIS 128342, at *9. And, in fact, like in *Frankel-Ross*, the name on Markose's wire transfer and the U.S. Bank account did not refer to two different people. They referred to the same person, Darrion House (or someone using his name), who happened to be a fraudster. Thus, the resolution procedures of § 4A-207 would not apply.

Moreover, the dichotomy between the name on the wire transfer and the name of the account holder is irrelevant because § 4A-207 states that "if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order." N.Y. UCC § 4A-207(b)(1). Further, the "beneficiary's bank need not determine whether the name and number refer to the same person." *Id.* Plaintiffs do not allege that U.S. Bank had any actual knowledge, *id.* § 1-202(b), that the name and number on the wire transfer referred to different people. Further, U.S. Bank was under no obligation to determine if the name and number matched. *Id.* § 4A-207(b)(1); *see also id.* cmt. 2 ("If Beneficiary's Bank did not know about the conflict between the name and number, subsection

(b)(1) applies. Beneficiary's Bank has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order."). This is so because

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. The process is comparable to that used in automated payment of checks. The standard format, however, may also allow the inclusion of the name of the beneficiary and other information which can be useful to the beneficiary's bank and the beneficiary but which plays no part in the process of payment. If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons.

N.Y. UCC § 4A-207 cmt. 2.

Moreover, even assuming U.S. Bank did have actual knowledge of a difference between the account number and the beneficiary, which Plaintiffs do not and cannot allege, the remedy is an unwinding of the payment order in sequence, not direct liability by the beneficiary bank to the sender. *Frankel-Ross*, 2016 U.S. Dist. LEXIS 128342, at *9-10 (citing N.Y. UCC § 4A-402(d)). If a bank had actual knowledge that the name and number on a wire transfer order referred to

different persons and paid the beneficiary regardless, § 4A-402 instructs that "the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay." N.Y. UCC § 4A-402(d). The refund, however, incorporates a privity requirement and "applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Frankel-Ross*, 2016 U.S. Dist. LEXIS 128342, at *10 (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 101 (2d Cir. 1998)). Thus, in *Frankel-Ross*, the plaintiff's cause of action was against Wells Fargo, the bank with which she was in privity, and not Chase, with which she was not in privity. Accordingly, even if Plaintiffs prevail on their claim pursuant to § 4A-207 by proving that U.S. Bank knew that the name on the wire transfer form did not match the name on the account (which is not the case anyway), Plaintiffs have no claim against U.S. Bank because they were not in privity with it.

The court in *Tzaras* reached the same result as in *Frankel-Ross*. There, plaintiff claimed that his inclusion of sub-account numbers on the wire transfer forms should have caused Chase to determine that the beneficiary was non-existent because there were no sub-accounts. *Tzaras*, 2003 U.S. Dist. LEXIS 2707, at *12. Chase responded that because the payment orders identified an account number and First Equity as the beneficiary, its automated system properly credited First Equity's account regardless of further instructions. *Id.* The court agreed with Chase, finding that § 4A-207 requires a bank to reject a payment order only "when the beneficiary is unidentifiable. A beneficiary can be identified in any number of ways including the plain wording of the transfer order or the circumstances of the transfer . . . . There was admittedly at least one identifiable beneficiary, and since § 4A-207 requires no more, the Defendant was not required to refuse the transfer under § 4A-207." *Id.* at *12-13 (quoting *Donmar Enters., Inc. v. S. Nat'l Bank of N.C.*,

828 F. Supp. 1230, 1240 (W.D.N.C. 1993)). The court further held that the purpose of § 4A-207 is to caution senders not to include two names on wire transfers, not to cause banks to focus on comparing the name on the wire transfer to that on the account. *Id.* at *14. Here, U.S. Bank received a wire transfer with a proper account number, and there was therefore no "misdescription of beneficiary" and U.S. Bank was not required to reject the payment order. Accordingly, Plaintiffs have no claim pursuant to § 4A-207.

### C. **<u>Plaintiffs' Conversion Claim is Without Merit</u>**

Based on the same set of allegations as supporting its third-party beneficiary negligence claim, Plaintiffs assert a cause of action for conversion. (Complaint, Count Five). The Court should reject this claim because it seeks to accomplish through the tool of an intentional tort what Plaintiffs cannot accomplish through negligence. *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011) (Wood, J.) (holding that conversion is an intentional tort requiring a showing of an "an intent to exercise dominion or control over property in a manner inconsistent with the rights of another" (citation omitted)). Nowhere in the Complaint do Plaintiffs specifically allege that U.S. Bank acted intentionally, or proffer facts from which such a conclusion is possible. Accordingly, there is no basis for a conversion claim against U.S. Bank.

Further, it is established New York law that a claim for conversion of property, including money, can only stand where the money is a "specific, identifiable thing." *Acevado v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 40242, at *33 (S.D.N.Y. Mar. 23, 2012) (Gardephe, J.). New York courts have held that funds deposited into a bank account "are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank." *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire*

*Privee*, 160 F.3d 146, 148 (2d Cir. 1998). Here, there is no dispute that Plaintiffs voluntarily (though as a result of deceit) deposited funds into U.S. Bank. Upon deposit, those funds became insufficiently specific and identifiable from U.S. Bank's other funds. Accordingly, a conversion claim is legally improper.

### D. Plaintiffs' Negligent Infliction of Emotional Distress Claim is Without Merit

Lastly, Plaintiffs allege a claim against U.S. Bank for negligent infliction of emotional distress. (Complaint, Count Six). They maintain that they suffered emotional distress and physical suffering as a result of U.S. Bank's conduct. (Complaint ¶¶ 77-78). The Court should dismiss this claim because Plaintiffs do not allege facts sufficient to prove negligent infliction of emotional distress in either pathway provided by New York law.

In New York, a plaintiff may generally establish negligent infliction of emotional distress using either the "bystander" or "direct duty" theories. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Under the bystander theory,

> a defendant's conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence.

*Id.* at 421 (quoting *Bovsun v. Sanperi*, 61 N.Y.2d 219, 229 (1984)). This theory is obviously inapplicable. Plaintiffs do not allege that they suffered shock or fright resulting from their observation of serious physical injury or death to someone in their immediate family.

Under the "direct duty" theory, a plaintiff can state a claim for negligent infliction of emotional distress caused by "defendant's breach of a duty which unreasonably endangered

[plaintiff's] own physical safety." *Baker*, 239 F.3d at 421. Here, as explained above, U.S. Bank owed no duty to the Plaintiffs as non-customers. Further, Plaintiffs do not, and cannot, allege that U.S. Bank endangered their physical safety. Thus, they cannot state a claim using the "direct duty" theory either.

New York courts have also permitted negligent infliction of emotional distress claims to proceed where there is "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious." *Johnson v. State*, 37 N.Y.2d 378, 382 (1975). Such cases are limited to egregious circumstances, however, such as negligent misinformation that one's parent had died, or a misdiagnosis of HIV infection. *Id.* at 421. No such "special circumstances" exist here to serve as a guarantee of the non-spuriousness of Plaintiffs' claim. Therefore, the Court should dismiss the negligent infliction of emotional distress claim.

Moreover, if the Court decides to dismiss this claim, it is likely that it would lack subject matter jurisdiction as to the other claims because Plaintiffs' claims for losses arising from the mis-wired funds is either $61,600 (Complaint ¶ 70) or $66,000 (Complaint ¶ 79), either one below the $75,000 threshold required by 28 U.S.C. § 1332.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, U.S. Bank respectfully requests that the Court grant the Motion and dismiss this action against it.

Dated: December 6, 2019

Respectfully submitted,

**THE GINZBURG LAW FIRM, P.C.**

/s/ *Daniel Ginzburg*
By: Daniel Ginzburg
Mailing Address
151 Highway 516, Unit 736
Old Bridge, New Jersey 08857
(732) 284-3841 (tel)
*Counsel to Defendant U.S. Bank National Association*