**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

SHAJI MARKOSE and RAGITHA SHAJI,

Plaintiffs,

-against-

CITIBANK NATIONAL ASSOCIATION
and U.S. BANK NATIONAL ASSOCIATION,

Defendants.

Civil Action No.: 7:19-cv-07019-CS

---

MEMORANDUM OF LAW IN OPPPOSITION TO DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S MOTION TO DISMISS

=================================================================

MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff MD 2097*
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com

Ellen Sackstein, Esq.
*Of Counsel*

# Table of Contents

**I. INTRODUCTION........................................................................................1**

**II. ARGUMENT...............................................................................................1**

A. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM....................................................1

B. LEGAL BACKGROUND IN CONTEXT ..........................................................3

*1. CO REV ST § 4-4.5-207 "Misdescription of Beneficiary”.................................3*

*2. U.S. Bank, as an organization, is chargeable with knowledge that, as regards the account, the beneficiary was either unidentifiable or non-existent...................................5*

*3. U.S. Bank failed to meet the legal standards for opening a business account set by both Colorado Division of Banking and by U.S. Bank’s own account requirements .........6*

a) U.S. Bank was not in compliance with its own internal rules, guideline and protocols for• opening new bank accounts when it opened a bank account for “GIANT LUXURY EVENT PLANNING LTD" ..........................................................6

b) U.S. Bank was not in compliance with Colorado banking laws, rules and regulations for opening new bank accounts when it opened a bank account for “"GIANT LUXURY EVENT PLANNING LTD. ..........................................................8

c) Fedwire wire transfer transmittal named “DARRION HOUSE LAW” as the beneficiary, which required U.S. Bank to reject the funds since “DARRION HOUSE LAW” was not an identifiable beneficiary as defined by UCC § 4A-207 U.S Bank should have been issued a soft decline..........................................................10

C. PLAINTIFFS MAY MAINTAIN A CAUSE OF ACTION FOR CONVERSION OF MONEY ...........15

*1. Due to its derogation of duty in opening the account, U.S. Bank created a bailment when it improperly accepted plaintiff’s payment order ................................................15*

D. PLAINTIFFS MAY MAINTAIN CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ..........................................................................................19

**III. CONCLUSION ......................................................................................20**

# TABLE OF AUTHORITIES

**CASES**

BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F.Supp.2d 486, 505 (S.D.N.Y. 2013 ........ 18

Broadnax v. Gonzalez, 2 N.Y.3d 148, 153, 777 N.Y.S.2d 416, 809 N.E.2d 645 (2004)........ 20

Caldwell v. 928 Gerard Ave. Partners, 57 Misc.3d 85761 N.Y.S.3d 454 (Civ. Ct., Bronx County, 2017)........ 15

Charles E. v. Frank E., 72 A.D.3d 1439, 1441, 899 N.Y.S.2d 464 [3d Dept. 2010 ........ 15

Colo. Capital Invs., Inc. v. Owens, 304 F. App'x 906, 908 (2d Cir. 2008) ........ 20

Commerzbank AG v. U.S. Bank National Association, 277 F.Supp.3d 483, 496 (S.D.N.Y. 2019)........ 18

Donmar Enterprises v. Southern Nat. Bank, 828 F. Supp. 1230, 1239 (W.D.N.C. 1993) ........ 12

Frankel-Ross v. Congregation Ohr Hatalmud, 2016 U.S. Dist. LEXIS 128342, at *9 (S.D.N.Y. Sept. 13, 2016) (Buchwald, J.)........ 12

Glenn Justice Mortg. Co. v. First Nat. Bank, 592 F.2d 567 (10th Cir. 1979) ........ 18

Haiti v. Duvalier, 211 A.D.2d 379 (N.Y. App. Div. 1995) ........ 18

Hoffman v. Unterberg, 9 A.D.3d 386 (2d Dept. 2004) ........ 18

Hutton v. Public Storage Mgmt., Inc.,177 Misc.2d 540, 541, 676 N.Y.S.2d 886 (1998) ........ 16

Isik Jewelry v. Mars Media, Inc., 418 F.Supp.2d 112 (E.D.N.Y. 2005): ........ 15

Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113 (N.Y. App. Div. 1990) ........ 18

Marchak v. JPMorgan Chase & Co.,84 F.Supp.3d 197 (2015) ........ 16

Mortimer v. City of New York, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018) ........ 19

Mutual Benefits Offshore Fund, Ltd. v. Zeltser Eyeglasses, 172 A.D.3d 648 (1st Dep't 2019) ........ 19

Pokoik v Gittens, 171 AD2d 470, 471 [1st Dept 1991)........ 19

Sesto v. Slaine, 171 F.Supp.3d 194, 203-204 (S.D.N.Y. 2016)........ 19

Taggart v. Costabile, 131 A.D.3d 243, 14 N.Y.S.3d 388, 397 (2d Dep't 2015) ........ 20

Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York, 734 F. Supp. 2d 368 (S.D.N.Y. 2010) ........ 18

Tzaras v. Evergreen Int'l. Spot Trading, Inc., 2003 U.S. Dist. LEXIS 2707, at *18 (S.D.N.Y. Feb. 25, 2003) ................ 12

World Ambulette Transportation, Inc. v. Kwan Haeng Lee, 161 A.D.3d 1028, 78 N.Y.S.3d 137 (2d Dep't 2018)....... 18

**STATUTES**

Bank Secrecy Act (BSA), 31 USC § 5311 et seq ........................................................................................ 16

CO Rev Stat § 4-1-202 (2018) Notice – knowledge........................................................................................ 6

Money Laundering Control Act of 1986 (MLCA), 18 USC § 1956-1957 .................................................................. 16

**REGULATIONS**

C.R.S. § 11-105-112 (1)(e). ........................................................................................................................ 9

https://www.sos.state.co.us/pubs/info_center/laws/Title7/Title7Article90Part3.html.................................... 9, 14

# I. INTRODUCTION

Plaintiffs Shaji Markose and Ragitha Shaji ("Plaintiffs") respectfully submit the following memorandum of law in opposition to Defendant U.S. Bank National Association ("U.S. Bank") motion to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

For sake of brevity, Plaintiffs reference the Amended Complaint (Ginzburg Decl., Ex. 1 – Plaintiffs' Amended Complaint), sections entitled "Background" ¶¶ 12-17 and "Factual Allegations" ¶¶ 18-38 for a Statement of Relevant Facts. As for U.S. Bank's "Statement of Relevant Facts": while defense counsel states that his factual recitation is gleaned from Plaintiffs' Amended Complaint, it is highly editorialized with argument.

# II. ARGUMENT

## A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

A dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. Mindful of the tension between permitting a

"short and plain statement" and requiring that the statement "show[]" an entitlement to relief, the Supreme Court has clarified the pleading standard established by Fed. R. Civ. P. 8(a)(2

At the complaint stage, all that is needed are plausible claims. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 of the Federal Rules of Civil Procedure does not require hyper-technical, code-pleading. It is notice pleading.

At the pleading stage on a motion to dismiss under Rule 12(b)(6), the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in *Iqbal*, supra, 556 U.S. at 679. First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.*, at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Id.*, at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Regarding the character of the factual content in determining of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense. . . ." *Id.*, at 679 (citation omitted). (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Id.* It "does not impose a probability requirement." *Twombly,* 550 U.S. at 556. see also *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a motion to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

Here, plaintiffs plead detailed allegations that are facially plausible and provide fair notice to Defendant U.S. Bank. Accordingly, the Court should deny Defendant's Motion to Dismiss.

## B. Legal Background in Context

### *1. CO REV ST § 4-4.5-207 "Misdescription of Beneficiary"*

Colorado Revised Statute § 4-4.5-207, "Misdescription of Beneficiary," mandates that acceptance of the payment order should not have occurred because U.S. Bank knew, upon improperly opening a business bank account titled "GIANT LUXURY EVENT PLANNING LTD," that the beneficiary was either unidentifiable or nonexistent. The instant case turns on the interpretation of CO REV ST § 4-4.5-207, "Misdescription of Beneficiary," which provides in pertinent part as follows:

> Misdescription of Beneficiary
>
> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (2) If the beneficiary's bank pays the person identified by name <u>or knows</u> that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was

entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur. (*emphasis added*))

Defense counsel makes the specious claims in paragraph 2 of his Memorandum of Law, that suffix "Darrion D House, Joo" was either a typo or Mr. House's corporate title within the business. It is inconceivable that a trained U.S. Bank account manager would have placed a comma after a name, and then spelled the letters J-o-o. Certainly, the account manager did not intend to type "Jr." as the letters J" and "r" are far from one another on the keyboard. No properly trained bank account manager would perchance make that implausible error. Also, one would expect that a supervisor would review the documentation provided by bank employees charged with vetting individuals who apply as new account holders. And a competent bank account manager would not have been distracted by the signature card bearing what appears to read "Darrion House," as any mark or sign might constitute a signature. Finally, should we assume that the bank account manager did her job seeking proof of identity for a "Darrion House, JOO", any identification proffered was necessarily fraudulent and should have been detected by a bank account manager. It is not surprising, then, that nowhere in defense counsel's moving papers does he suggest that personal identifying information was ever sought or received by his client, U.S. Bank, to verify the identity of the proposed account holder. "DARRION D HOUSE, JOO".

An alternative and likewise farfetched notion floated by defense counsel and thrown into the mix: "JOO" was possibly Darrion House's corporate title within the company. To test this unsubstantiated hypothesis, the Articles of Organization bear a closer examination. (It should be noted that the redactions to Defendant Exhibit 3 (Ginzburg Decl., Ex. 3 – Articles of Organization) were unnecessary, as same, in its entirety, is public record found online.**)** Not

only is the fraudulent business set up by the criminal imposter was not a corporation (it was denominated "ltd"), notably, there is NO individual whatsoever designated as the person forming the limited liability company and no individual named as the registered agent. Only the fraudulent entity "GIANT LUXURY EVENT PLANNING LTD" is named as the "person" forming the limited liability company. It is worth reminding the court at this juncture that plaintiff never named "GIANT LUXURY EVENT PLANNING LTD" in his wire transfer order.

"Darrion House" is merely identified as the individual named as having caused the Articles of Organization to be filed, who pressed the "SUBMIT" button online. The individual could have been just about anyone: a clerk working at a business entity filing service who was over the age of 18 could have filed it. That the fraudster who tricked the bank into opening a business account signed what appeared to read "Darrion House" does not change the fact that "Darrion House" did not have any authority, apparent or actual, with regard to "GIANT LUXURY EVENT PLANNING LTD" .*See.* *https://www.sos.state.co.us/pubs/business/helpFiles/ARTORG_LLC_HELP.html*

***2. U.S. Bank, as an organization, is chargeable with knowledge that, as regards the account, the beneficiary was either unidentifiable or non-existent.***

Despite U.S. Bank's protestations to the contrary, pursuant to Colorado law governing commercial transactions, U.S. Bank, as an organization, is chargeable with knowledge that, as regards the account, the beneficiary was either unidentifiable or non-existent. n.b. New York's statute is identical. N.Y. U.C.C. Law § 1-202 (f) Notice; Knowledge (McKinneys)

The relevant UCC section describes organizational "knowledge" as follows:

> (f) **Notice, knowledge, or a notice or notification received by an** organization is effective for a particular transaction from the time it is brought to the attention of the individual

> conducting that transaction and, in any event, from the time it would have been brought to the individual's attention ***if the organization had exercised due diligence***. **An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines.** Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

CO Rev Stat § 4-1-202 (2018) Notice – knowledge.

Surely, U.S. Bank would agree that it maintained reasonable routines regarding the manner in which it instructed its account managers in the protocols for opening business accounts. Furthermore, as a FDIC bank, subject to rigorous federal and state laws, rules and regulations, U.S. Bank demanded that its account managers exercised reasonable compliance with such routines designed to maintain legal compliance. The account which enabled this fraud to occur should never have been opened by U.S. Bank.

***3. U.S. Bank failed to meet the legal standards for opening a business account set by both Colorado Division of Banking and by U.S. Bank's own account requirements***

*a) U.S. Bank was not in compliance with its own internal rules, guideline and protocols for• opening new bank accounts when it opened a bank account for "GIANT LUXURY EVENT PLANNING LTD"*

As set forth below, had U.S. Bank exercised "due diligence" as required under Colorado Revised Statutes, U.S. Bank would have known at the time the fraudster attempted to open a business account, that there was no authority to open a business account for "GIANT LUXURY EVENT PLANNING LTD". Nor would U.S. Bank have opened a business account for "GIANT LUXURY EVENT PLANNING LTD" had it followed its established protocols.

Defense counsel is curiously silent as to what US Bank demands of an individual attempting to open a "Gold Business Account", although he did provide a redacted copy of the signature card on file for the fraudster's account. (Ginzburg Decl., Ex. 2 – Signature Card)

That information, however, can be found online. *https://www.usbank.com/business-banking/business-bank-accounts/business-checking/gold-business-checking-account-package.html* Among other things, every individual who wishes to open a Gold Business Account must present both their "Business Employer Identification Number (EIN) or tax ID number (Sole proprietors can use the owner's social security number)" ***as well as*** **"Government-issued photo ID and Social Security number for you and anyone else authorized to sign checks or make transactions on behalf of your organization".** (*emphasis added*) *See, https://www.usbank.com/business-banking/business-bank-accounts/business-checking/gold-business-checking-account-package.html* Presumably, then, the account manager handling this potential new customer would have documented efforts evincing compliance with internal and governmental guidelines.

Furthermore, neither DARRION D HOUSE, JOO, the account holder indicated on the signature card nor DARRION HOUSE LAW, the "beneficiary" the fraudster used to scam plaintiffs, and who plaintiff named in the wire transfer, is not a "natural person": both these concocted names relate to a non-existent or unidentifiable beneficiary. U.S. Code of Federal Regulations provide that "Person means a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit." *See*, 12 CFR § 323.9.

"GIANT LUXURY EVENT PLANNING LTD", as the only "person" referenced in the Articles of Organization, obviously is not a "natural person" and could not provide authentication concerning proof of personal tax identification. *See*, https://www.sos.state.co.us/pubs/info_center/laws/Title7/Title7Article90Part3.html

Therefore, it was incumbent upon "Jennifer A. Westbrook", who opened a bank account online for "GIANT LUXURY EVENT PLANNING LTD" for account holder "DARRION D HOUSE, JOO" (Ginzburg Decl., Ex. 2 – Signature Card) to demand proof of personal tax identification from the individual presenting himself to U.S. Bank. One can assume she never requested same because the account that enabled this fraud to occur should never have been opened by U.S. Bank.

*b) U.S. Bank was not in compliance with Colorado banking laws, rules and regulations for opening new bank accounts when it opened a bank account for "''GIANT LUXURY EVENT PLANNING LTD.*

U.S. Bank is in dereliction of its duties under Colorado Division of Banking laws and rules governing opening entity accounts. Colorado Revised Statutes § 11-105-112 provides in pertinent part:

> Entity account - certificate of existence and authority - definitions
>
> **(1)** For any deposit or loan account that is opened by one or more persons acting or purporting to act for or on behalf of an entity with any financial institution transacting business in this state, such person may provide the financial institution with a certificate to evidence the existence of the entity and the authority of such person to act for or on behalf of the entity with respect to the account. The certificate of existence and authority shall be an affidavit executed by such person and shall include the following, as applicable:
>
> **(a)** The name and mailing address of the entity;
>
> **(b)** The type of entity and the state, country, or other governmental authority under whose laws the entity was formed;

> **(c)** The organization date of the entity;
>
> **(d)** The name, mailing address, and office or other position held by the person executing the certificate; and
>
> **(e)** A statement that the board of directors, managers, members, general partners, or other governing body of the entity opening the account has duly taken all action legally required to open the account in the name of the entity and **the name, office, or other position of the person who has been duly authorized to engage in transactions with respect to the account**, including any limitation that may exist upon the authority of such person to bind the entity and any other matters concerning the manner in which such person may deal with the account….

*See, https://www.sos.state.co.us/pubs/info_center/laws/Title7/Title7Article90Part3.html*

Notably, U.S. Bank never obtained any statement from any person who has been duly authorized to engage in transactions with respect to the account, as required under C.R.S. § 11-105-112 (1)(e).

Nowhere in defense counsel's papers does it appear that U.S. Bank is in receipt of any statement that "the name, office, or other position of the person who has been duly authorized to engage in transactions with respect to the account", as required by Colorado Revised Statutes. Nevertheless, without proper authority, on or about August 6, 2018, a U.S. Bank representative "Jennifer A. Westbrook" opened a bank account online for "GIANT LUXURY EVENT PLANNING LTD" for accountholder "DARRION D HOUSE, JOO" who provided, upon information and belief, a presumably false tax identification number: "TIN 83-1463593" and no additional personal identifying information. See Signature Card. To summarize, U.S. Bank's omissions in failing to properly vet the new business account violated both Colorado Revised Statutes and U.S. Bank's own internal guidelines. Opening account for "GIANT LUXURY EVENT PLANNING LTD" without first obtaining personal identifying documents that U.S. Bank's own guidelines or even complying with Colorado Division of Banking rules requiring

proper vetting of new business accounts created the opportunity for the fraudster, enabling him to commit acts of criminal fraud.

The specifics of the Defendant U.S. Bank distribution of the wire transfer are as follows: On August 15, 2018, the criminal imposter first made two separate cash withdrawals of $2,500, for a total of $5,000. The imposter then requested a third cash withdrawal, in the sum of $9,800. With the third cash withdrawal, the total amount requested to be withdrawn amounted to $14,800, which was a daily aggregate that was required by federal law to have triggered a reporting obligation of the part of Defendant U.S. Bank.

The attempted cash withdrawal of over $10,000 in one day from Defendant U.S. Bank should have triggered suspicious activity alerts. Instead of adhering to its own guidelines and to federal and state laws, rules and regulations, on August 15, 2018, Defendant U.S. Bank permitted one person, who could not have verified his identity as "Darren D House, Joo" as that moniker is fictitious, to make multiple cash withdrawals, ever-escalating larger amounts,: $2,500; $2,500; $9,800; $9,800, $12,000; and $30,000, all in one calendar day, at various branches in Colorado Springs, Colorado, each branch located within miles of each other.

Prior to the deposit of plaintiffs' funds into the account managed by the imposter at said defendants' depository bank, , upon information and belief based upon details related by law enforcement, there was minimal financial activity, all modest in scale, namely two withdrawals, each less than one-hundred dollars. Furthermore, the fraudulent account was

> *c) Fedwire wire transfer transmittal named "DARRION HOUSE LAW" as the beneficiary, which required U.S. Bank to reject the funds since "DARRION HOUSE LAW" was not an identifiable beneficiary as defined by UCC § 4A-207 U.S Bank should have been issued a soft decline*

On August 14, 2018, Plaintiff appeared at his local Citibank branch and requested that

$133,311.76 be wired to "Darrion House Law", who Plaintiff believed was the account holder for an account holding a down payment on a new house for his family. The wire payment order transmitted by FEDWIRE clearly indicates the intended beneficiary-DARRION HOUSE LAW. (Sackstein Decl., Ex. 2-wire order transmitted by Citibank to defendant U.S. Bank on August 14, 2018).

The beneficiary named in the FEDWIRE was "Darrion House Law." (Sackstein Decl., Ex. 2-wire order transmitted by Citibank to defendant U.S. Bank on August 14, 2018, pp. 3-4)

The proper beneficiary of account in US Bank was the business account of Giant Luxury Event Planning, LTD, and any monies to be deposited in the account should have been payable to the order of Giant Luxury Event Planning, LTD-- not Darrion D House, or Darrion D House, JOO, or Darrion House Law.

A duty was imposed upon U.S. Bank, the beneficiary bank, when it received the wire transfer request to have in place a commercially reasonable security procedure. CO REV ST § 4-4.5-201. Security procedure. The appropriate action when the correct account number entered did not match the beneficiary name, the U.S. Bank, as the processing entity, should have performed a soft decline. If the sender confirms the identity of the beneficiary, then the payment order can be accepted and processed by the processing entity. That is, U.S. Bank should have requested confirmation from the sender to determine whether the provided beneficiary name is correct. The correct beneficiary should have been "GIANT LUXURY EVENT PLANNING" but the FEDWIRE named "DARRION HOUSE LAW" as the intended beneficiary. Had U.S. Bank performed the soft decline, it would not have accepted the payment order. This would have avoided the harms caused by U.S. Bank's having failed in its legal "due diligence"

obligation regarding opening new business accounts. Sadly, having this second chance to correct its error in opening the account, U.S. Bank inadvertently became the bailor of plaintiffs' monies. The intended beneficiary "Darrion House Law" was included in the Fedwire transmitted to U.S. Bank under string under the tag [4200] in the wire transfer received by U.S. Bank. (Sackstein Decl., Ex.4-Fedwire Funds Service Format Reference Guide, Effective November 10, 2014, p. 3) The inclusion of the name of the beneficiary in this field is mandatory. *Id.,* at pp. 1. Under the explanation for tag [4200] describes Mandatory when {3600} is CTR, CTP, DRW or DRC; otherwise optional…. In the wire transfer order to U.S. Bank, the tag {3600} is CTP. Thus, this information regarding Darrion House Law appears to be mandatory.

The *Donmar* Court finds that "§ 4A-207 straightforwardly requires banks to reject funds transfers received through the FedWire system which do not come to them bearing at least one identifiable beneficiary." *Donmar Enterprises v. Southern Nat. Bank*, 828 F. Supp. 1230, 1239 (W.D.N.C. 1993) The Court finds that § 4A-207 only requires a bank to refuse a payment order when the beneficiary is unidentifiable. A beneficiary can be identified in any number of ways including the plain wording of the transfer order or the circumstances of the transfer. *Id* at 1240

Defense counsel relies heavily on *Tzaras v. Evergreen Int'l. Spot Trading, Inc.,* 2003 U.S. Dist. LEXIS 2707, at *18 (S.D.N.Y. Feb. 25, 2003) *and Frankel-Ross v. Congregation Ohr Hatalmud*, 2016 U.S. Dist. LEXIS 128342, at *9 (S.D.N.Y. Sept. 13, 2016) (Buchwald, J.). for the spurious proposition that somehow there was one identifiable beneficiary. He bases his reasoning on an unreasonable assumption that somehow "Darrion D House" and "Darrion D House, JOO" and "Darrion House Law" are similar names.

In *Tzaras*, the plaintiff wired funds to a particular account and an identifiable account holder, adding that the monies were to be deposited to a sub-account. The *Tzaras* court held that 4-207 did not apply because there was an identifiable account and identifiable account name. The plaintiff in Tzaras unsuccessfully argued that while the name of a beneficiary was included, that other language distinguished it, referencing an unidentifiable beneficiary.

> Here, plaintiff does not dispute that each of his nine wire transfer payment orders set forth the account number and name of First Equity. Instead, plaintiff maintains that the language of "for further credit to" Tzaras constitutes "other identification of the beneficiary" that refers to a non-existent or unidentifiable person or account. (Pl's Opp. Br. at 6). Plaintiff focuses on the disjunctive "or" in the language of § 4–A–207(1), arguing that if even one of the methods of identification (account number, account name, or "other identification of the beneficiary") refers to a non-existent account, § 4–A–207(1) applies.

In *Frankel-Ross*, the plaintiff suggested that "Ohr Hashabbos" refers to a different entity than "Congregation Ohr Hatalmud, Ohr Hashabbos, & Ohr Kitov, Inc.". The court disagreed.

Plaintiff instead focuses this UCC §4-207(b)(2) Misidentification of Beneficiary claim like this: No iteration of "Darrion House' is relevant to the instant case in establishing a possible beneficiary. As set forth earlier, "Darrion House" was a mere filer of the Articles of Organization, nothing more. Moreover, "Darrion House Law" is NOT similar to "Darrion D. House, JOO". Inclusion of "Law" in the name of the purported beneficiary, if compared to the obviously concocted name "Darrion D House , JOO" indicated on the U.S. Bank's signature card (Ginzburg Decl., Ex. 2 – Signature Card) would have alerted any U.S. Bank representative exercising due diligence and applying common sense and good judgment to reject the payment order. First, inclusion of "Law" in the name of the purported beneficiary clearly implied that the beneficiary was a law firm. A simple internet search to review the names of attorneys licensed to practice in the State of Colorado and in the U.S. generally, reveals that there is no attorney office

named "Darrion House Law". Apart from the obvious distinctions in name, it is important to note that the proper beneficiary of a limited liability company would be the company itself; in this case "GIANT LUXURY EVENT PLANNING LTD". Defense counsel's contention "Darrion House Law" resembles "Darrion D. House, Joo" strains credulity.

Concerning the other implausible notion floated by defense counsel and thrown into the mix: "JOO" was possibly Darrion House's corporate title within the company. Not only is the fraudulent business set up by the criminal imposter was not a corporation (it was denominated "ltd") as aforesaid, there is NO individual designated to the person forming the limited liability company; no individual named as the registered agent. Only "GIANT LUXURY EVENT PLANNING LTD" is named as the "person" forming the limited liability company. Notably, plaintiff never named ""GIANT LUXURY EVENT PLANNING LTD" in his wire transfer order. Furthermore, neither DARRION D HOUSE, JOO nor DARRION HOUSE LAW is not a "natural person": these concocted names relate to non-existent or unidentifiable beneficiaries See U.S. Code of Federal Regulations, "Person means a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit."12 CFR § 323.9

In this regard, it is worth noting that the Articles of Organization are NOT self-authenticating concerning proof of tax identification. Filing an Article of Organization does not require personal identifying information.

*https://www.sos.state.co.us/pubs/info_center/laws/Title7/Title7Article90Part3.html*

As stated above, U.S. Bank requires that in order to open any business account, the applicant must provide "Government-issued photo ID and Social Security number for you and

anyone else authorized to sign checks or make transactions on behalf of your organization". Therefor the account titled "GIANT LUXURY EVENT PLANNING LTD" should never have been opened by U.S. Bank.

## C. Plaintiffs may maintain a cause of action for conversion of money

### *1. Due to its derogation of duty in opening the account, U.S. Bank created a bailment when it improperly accepted plaintiff's payment order*

The general rule is that once funds are deposited in a bank account, the funds become the property of the bank. *Song Chuan Tech. (Fujian) Co. v. Bank of Am..N.A.*, Civil Action No. 2:16-3269-RMG (D.S.C. May. 8, 2017) 2017 WL 980248. There was no proper owner of the account and any monies deposited into the account created a bailment held by U.S. Bank in favor of plaintiffs. It is axiomatic that plaintiffs' rights are clearly superior to those of the criminal imposter. Therefore, any deposits in such account created a bailment in favor of the plaintiffs.

Any bailee holding another's property is responsible for the property's safekeeping and "perhaps could be liable in negligence" for failing to do so. *Caldwell v. 928 Gerard Ave. Partners,* 57 Misc.3d 85761 N.Y.S.3d 454 (Civ. Ct., Bronx County, 2017); *Charles E. v. Frank E.*, 72 A.D.3d 1439, 1441, 899 N.Y.S.2d 464 [3d Dept. 2010],

This type of bailment is not a gratuitous bailment nor is it a bailment for hire. As such, U.S. Bank should be held to high level of care.

As the Court stated in *Isik Jewelry v. Mars Media, Inc.*, 418 F.Supp.2d 112 (E.D.N.Y. 2005):

> The law, however, does not require a formal agreement for a bailment. "It is the element of lawful possession, however created, and duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense." (*citations omitted*). "The determination as to whether the relationship is one of bailor and bailee turns on

> whether there is a relinquishment of exclusive possession, control and dominion over the property." *Hutton v. Public Storage Mgmt., Inc.,*177 Misc.2d 540, 541, 676 N.Y.S.2d 886 (1998).

Other evidence of U.S. Bank's negligence exists. U.S. Bank was obligated under federal and state laws, rules and regulations to enforce anti-money laundering practices. See *Bank Secrecy Act (BSA), 31 USC § 5311 et seq; Money Laundering Control Act of 1986 (MLCA), 18 USC § 1956-1957, 12 C.F.R. § 353 (SUSPICIOUS ACTIVITY REPORTS).* Cf., *Marchak v. JPMorgan Chase & Co.,*84 F.Supp.3d 197 (2015)(violation of the BSA would be, at most, evidence of negligence).

U.S. Bank failed to enforce a commercially reasonable security procedure opening an account without authenticating the true identity of the account holder and by failing to take measures designed to detect fraud for loss prevention; by depositing funds designated for an account holder whose name was different from that in the wire transfer order; by permitting the imposter to withdraw tens of thousands of dollars, despite federal and state laws, rules and regulations prohibiting same.

Additionally, the moment that the fraudster account holder "Darren D. House, Joo" appeared at a third teller at a third U.S. Bank branch on the same business day, seeking to execute a third cash withdrawal, this time in the amount of $9800, after having already withdrawn $2,500 in cash, and then a second separate withdrawal of $2,500 in cash again, totaling $5,000, for a total of $14,800 in cash, "bells and whistles" should have gone off in U.S. Bank's security system, identifying account 103685341879 as suspect and alerting U.S. Bank fraud-prevention personnel electronically, disallowing what was now a daily cumulative withdrawal totaling $10,000 or more. No signed declaration from the named account holder, the

fictitious "Darren D House, Joo", was ever produced exist. This negligence allowed the fraudster to perpetrate a fraud, and proximately cause Plaintiffs' losses, as the fraudster absconded with Plaintiffs' funds.

The attempted cash withdrawal of over $10,000 in one day from Defendant U.S. Bank should have triggered suspicious activity alerts. Instead of adhering to its own guidelines and to federal and state laws, rules and regulations, on August 15, 2018, Defendant U.S. Bank permitted one person, who could not have verified his identity as "Darren D House, Joo" as that moniker is fictitious, to make multiple cash withdrawals, ever-escalating larger amounts,: $2,500; $2,500; $9,800; $9,800, $12,000; and $30,000, all in one calendar day, at various branches in Colorado Springs, Colorado, each branch located within miles of each other.

Prior to the deposit of plaintiffs' funds into the account managed by the imposter at said defendants' depository bank, upon information and belief based upon details related by law enforcement, there was minimal financial activity, all modest in scale, namely two withdrawals, each less than one-hundred dollars.

U.S. Bank failed to utilize appropriate protocols and safeguards to verify the true identity of the account holder named in the beneficiary account held by U.S. Bank. U.S. Bank. U.S. Bank thus wrongfully took possession of plaintiff's monies, having accepted the payment order without legal authority. Thus, U.S. Bank created a bailment and then negligently disbursed Plaintiffs' monies.

The duties owed to plaintiff derive from U.S. Bank's legal obligations under federal and state banking laws, rules and regulations, which, in turn, require adherence to internal bank protocols. In this instance, because the account was erroneously opened, and the payment order

was improperly accepted, the deposited monies should be deemed property in the form of a bailment held by U.S. Bank. *See generally, Glenn Justice Mortg. Co. v. First Nat. Bank, 592 F.2d 567* (10th Cir. 1979*)*

If specific wrongfully obtained funds can be traced to a particular bank account, a claim for conversion will lie. *Haiti v. Duvalier*, 211 A.D.2d 379 (N.Y. App. Div. 1995); *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113 (N.Y. App. Div. 1990); *World Ambulette Transportation, Inc. v. Kwan Haeng Lee*, 161 A.D.3d 1028, 78 N.Y.S.3d 137 (2d Dep't 2018). In *Lawson v. Full Tilt Poker Ltd.*, 930 F.Supp.2d 476 (S.D.N.Y. 2013), the Court held that: "When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." Citing, inter alia, *Hoffman v. Unterberg*, 9 A.D.3d 386 (2d Dept. 2004)

Defense counsel incorrectly maintains that conversion is an intentional tort. See C. Plaintiffs' Conversion Claim is Without Merit) The contrary is true. Rather, under New York law, " 'a tort action for economic loss will not lie' where the parties' relationship is governed by an express contract." *Commerzbank AG v. U.S. Bank National Association*, 277 F.Supp.3d 483, 496 (S.D.N.Y. 2019) citing *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F.Supp.2d 486, 505 (S.D.N.Y. 2013. *See also* "A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations. There is no conversion action where damages are sought for breach of contract. Rather, a plaintiff must show acts that were unlawful or wrongful as opposed to violations of contractual rights. *Id.*, 464 F.Supp.2d at 199 (S.D.N.Y. 2006) *compare Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York*, 734 F. Supp. 2d 368 (S.D.N.Y. 2010) (plaintiffs' negligence claims are foreclosed under the economic

loss doctrine, which precludes parties from improperly attempting to convert contract claims to tort claims seeking the same damages).

Conversion under New York law does not require either a tortious taking or bad faith is an element of the cause of action. Moreover, "whether or not [defendants] derive personal advantage is immaterial" for conversion. *Mutual Benefits Offshore Fund, Ltd. v. Zeltser Eyeglasses,* 172 A.D.3d 648 (1st Dep't 2019); *Pokoik v Gittens*, 171 AD2d 470, 471 (1st Dept 1991)

It should be noted that defense counsel relies on New York law, without regard to choice-of-law considerations.

### D. Plaintiffs may maintain cause of action for negligent infliction of emotional distress

Plaintiff assumed that when they wired a substantial part of their life savings to what they believed was a down payment for their new home to an attorney's office, it was their understanding that the banking system would take care that their money would not end up in a fraudster's account. As a result of the maladministration by U.S. Bank, as set forth above, plaintiffs suffered grief, sleeplessness, economic insecurity, and other emotional injuries.

In *Sesto v. Slaine*, 171 F.Supp.3d 194, 203-204 (S.D.N.Y. 2016), the court held that a claim for negligent infliction of emotional distress under New York law requires "showing 'a breach of a duty of care resulting directly in emotional harm ... even though no physical injury occurred,' as long as 'the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim ... possess[es] some guarantee of genuineness." *Mortimer v. City of New York*, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018) (alterations

in original) (quoting *Taggart v. Costabile*, 131 A.D.3d 243, 14 N.Y.S.3d 388, 397 (2d Dep't 2015) ). Nonetheless, "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury.' " *Colo. Capital Invs., Inc. v. Owens*, 304 F. App'x 906, 908 (2d Cir. 2008) (summary order) (*quoting Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153, 777 N.Y.S.2d 416, 809 N.E.2d 645 (2004).

Plaintiffs thus have stated a claim for negligent infliction of emotional distress.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the Complaint in its entirety.

DATED: Long Beach, NY 11561
January 31, 2020

Respectfully submitted,

Law Office of Michael Diederich, Jr.
MICHAEL D. DIEDERICH, JR.
Attorney for Plaintiffs
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com

By:
/s/ Ellen Sackstein

ELLEN SACKSTEIN, ESQ.
*Of counsel*
Attorney for Plaintiffs
522 Shore Road,#2E
Long Beach, NY 11561
516-432-8009